Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Pedro José Minaya<br><br>        Recurrente<br><br><br>        vs.<br><br><br>Departamento de Educación<br><br>        Recurrido | TA2026AP00192 | **APELACIÓN acogida como REVISIÓN ADMINISTRATIVA** procedente de la Comisión de Apelaciones del Sistema de Educación<br><br>Caso Núm.:<br>OASE-2021-00010<br>OASE-2021-00016<br><br>Sobre:  Retención |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de marzo de 2026.

Comparece ante nos el señor Pedro José Minaya (Sr. Minaya o Recurrente), quien nos solicita la revocación de la Resolución emitida el 31 de diciembre de 2025 y notificada el 7 de enero de 2026, por la Oficina de Apelaciones del Sistema de Educación (OASE). Mediante el referido dictamen, la agencia recurrida desestimó la impugnación del nombramiento del puesto de Coordinador de Programas Vocacionales, por falta de parte indispensable.  Además, la OASE declaró No Ha Lugar en cuanto a petición de la eliminación de la evaluación objetada y la reclamación de salarios dejados de devengar por cancelación de nombramiento.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración se confirma en parte y se revoca en parte el dictamen recurrido mediante los fundamentos que expondremos a continuación.

**I.**

El caso de autos tuvo su génesis el 3 de agosto de 2021, cuando el Sr. Minaya presentó un escrito de Apelación ante la OASE. En síntesis, alegó que el 8 de julio de 2021, recibió una carta del Departamento de Educación (Recurrido) en la que se le notificó un resultado inadecuado, obtenido en la evaluación de su desempeño durante el año escolar 2020-2021. Como consecuencia, se dio por terminado su nombramiento como Coordinador de Programas Vocacionales. Este puesto era uno de naturaleza transitoria provisional, cuyo nombramiento comprendía desde el 8 de agosto de 2018 hasta el 7 de junio de 2019. Posteriormente, su nombramiento se extendió hasta los años escolares 2019-2020, 2020-2021 y 2021-2022. Adujo que el resultado de la evaluación fue contraria al debido proceso de ley, toda vez que no se le hizo entrega de los resultados de la misma. Indicó que, según su conversación con el señor Jacinto Robles Flores, director de la Escuela Rubén Rodríguez Figueroa, este obtuvo una buena calificación en su evaluación. Insistió en que la evaluación es nula por ser contraria a derecho. Consecuentemente, solicitó que: (1) se dejara sin efecto la carta emitida el 8 de julio de 2021; (2) que se dejara sin efecto la cancelación de su nombramiento; (3) que se ordene la restitución a su plaza; y (4) que ordene al Departamento de Educación a pagar todos los salarios, haberes y emolumentos dejados de recibir a raíz de la cancelación de su nombramiento.

Posteriormente, el 28 de septiembre de 2021, presentó una segunda Apelación en la cual indicó que el 7 de septiembre de 2021, luego de instado el recurso ante la OASE, el Departamento de Educación le entregó una copia de la evaluación realizada. Reiteró que, esta actuación es nula por llevarse a cabo en contra de las normas establecidas en las Cartas Circulares y los

Reglamentos del Departamento de Educación. Por ende, solicitó que se dejara sin efecto la evaluación correspondiente al año escolar 2020-2021.

Luego de varios trámites procesales, el 1 de febrero de 2023, el Recurrente presentó una Apelación Enmendada, en la cual agregó que el requisito impuesto sobre la evaluación para cancelar su contrato, es contrario a derecho y en violación a la Ley Núm. 156-2019, conocida como *Ley de Extensión de Nombramientos a los Maestros con Estatus Transitorio Provisional y con Nombramientos Transitorios Elegibles en Cualquier Unidad Académica y los Asistentes de Servicios al Estudiante (T1 y T2) Adscritos a la Secretaría Asociada de Educación Especial del Departamento de Educación de Puerto Rico*, 18 LPRA sec. 276 *et seq.* Indicó que, a raíz de la cancelación del contrato, no se le ha brindado la oportunidad de competir nuevamente por la plaza. Además, alegó que, posteriormente se nombró a una persona sin experiencia para el puesto de Coordinador de Programas Vocacionales, motivo por el cual, impugnó el nombramiento realizado por el Recurrido. Sostuvo que, el razonamiento para su terminación es insuficiente y se ha utilizado como medida disciplinaria en su contra al no tener una oportunidad para competir por esta plaza o una similar. Explicó que, conforme a la legislación vigente, el requisito sobre evaluaciones satisfactorias es aplicable cuando se solicita el cambio de estatus transitorio provisional a uno de estatus regular. Por ende, la determinación de la agencia es una injustificada, caprichosa, arbitraria y que atenta el debido proceso de ley. Finalmente, reiteró la solicitud de remedios realizados en los escritos presentados en 2021.

Tras varias incidencias procesales, la OASE celebró una vista administrativa el 1 de octubre de 2024. Examinada la postura de ambas partes, el 31 de diciembre de 2025, la agencia

apelada emitió su Resolución. El foro recurrido concluyó que el Departamento de Educación no erró en su determinación. La OASE indicó que la evaluación se realizó conforme a derecho. Más aún, la cancelación de su nombramiento responde al Memorado Oficial emitido el 4 de julio de 2021, intitulado Reclutamiento del Personal Docente de las Escuelas y del Nivel Postsecundario en el Departamento de Educación para el Año Escolar 2021-2022, cuyo inciso (C) (4) dispone que no se podrá seleccionar personal docente que haya recibido evaluaciones en su desempeño con nivel inadecuado. Especificó que el resultado inadecuado responde a los propios actos del Sr. Minaya, debido a que este no presentó su plan de trabajo. Según la evaluación presentada en evidencia, las puntuaciones que perdió el Recurrente corresponden a la falta de la entrega de un plan de trabajo. Más aún, durante su testimonio, este aceptó que no había realizado el mismo y que tampoco lo presentaría debido a que ya se encontraban a finales del año escolar. Sobre la impugnación del puesto, resolvió que, en vista de que la determinación afectaba los derechos de un tercero que no es parte en el pleito existía falta de parte indispensable.

Oportunamente, el 16 de enero de 2026, el Sr. Minaya presentó un escrito de Reconsideración. Insistió en que el procedimiento de evaluación no se llevó a cabo conforme a la Carta Circular del Departamento de Educación. Por otro lado, mencionó que su solicitud no acarreaba la impugnación del nombramiento de su sucesor. Agregó que, existía un interés propietario en el puesto, toda vez que su contrato se había extendido hasta el año escolar 2021-2022. Sostuvo que la legislación aplicable no requiere la evaluación de maestros como requisito para la contratación. Reconoció que, a la fecha de la vista administrativa, el término de su nombramiento había vencido, por lo que su petitorio se limitó al resarcimiento de los salarios no devengados

durante el año escolar 2021-2022 y la eliminatoria de la evaluación para poder competir en un puesto igual o similar al que ocupaba.

Consecuentemente, el 23 de enero de 2026, la OASE declaró No Ha Lugar su solicitud de reconsideración.

Inconforme, el 23 de febrero de 2026, el Apelante recurrió ante nos mediante el recurso que nos ocupa, en la cual imputó el siguiente señalamiento de error:

> *Erró la OASE al declarar No Ha Lugar la reconsideración manteniendo en pleno efecto y en vigor la Resolución del 31 de diciembre de 2025, notificada el 7 de enero de 2026 en clara violación al debido proceso de ley del recurrente.*

El 24 de febrero de 2026, este Tribunal emitió una Resolución en la cual le concedimos al Recurrido un término a vencer el 17 de febrero de 2026 para someter su posición. Conforme a lo ordenado, el 17 de marzo de 2026, el Departamento de Educación presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

**II.**

**A.**

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de

revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. de Corrección y Rehabilitación*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1027 (2020); *Rivera Concepción v. A. R. Pe.,* 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, **si el tribunal no se encuentra frente a alguna de esas situaciones,***

***aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia*** *administrativa recurrida. Íd., a la* pág. 628.

(Énfasis suplido).

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, a la pág. 819; *Torres Rivera v. Policía de PR*, *supra*, a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

> *El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.*
>
> ***Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo***.
>
> *Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.* Ley Núm. 38-2017, 3 LPRA sec. 9675.

(Énfasis nuestro).

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como, "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota,* 163 DPR 716, 728 (2005); *Misión Ind. P.R.* v. *J.P., supra,* a la pág. 131. Además, dicho Foro ha reiterado que:

> ***Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial,*** *en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway Motors,* 148 DPR 387, 397-398 (1999).

(Énfasis suplido).

Por tal razón, la parte que impugna la decisión administrativa tiene el deber de producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador. De forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra,* a la pág. 398; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999).

Dentro del contexto administrativo, se ha denominado parte a aquella persona cuyos derechos y obligaciones pueden verse afectados adversamente por la acción o inacción de la agencia. *JP. Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 188 (2009).

Resulta importante recordar que, las Reglas de Procedimiento Civil no aplican de manera automática en los procesos administrativos. Su uso se limita a que su implementación no resulte contraria a la naturaleza del procedimiento y no sea impedimento a la propiciación de una solución justa, rápida y económica. *Comisionado de Seguros PR v. Integrand*, 173 DPR 900, 928 (2008). Por ende, se debe hacer un balance entre el interés de evitar una demora que perjudique al consumidor y el interés de proteger los derechos de un tercero.

**B.**

El mecanismo de acumulación de parte indispensable está regulado por la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R.16.1, establece que "[l]as personas que tengan un interés común sin cuya presencia no puede adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". El "interés común" al que hace referencia la precitada regla, no se refiere a cualquier interés que una parte pueda tener en el pleito, sino a "un interés real e inmediato, no especulativo ni a futuro, que impida la confección de un remedio adecuado porque podría afectar o destruir radicalmente los derechos de esa parte ausente". *RPR & BJJ, Ex Parte*, 207 DPR 389, 408 (2021).

La doctrina sostiene que una parte indispensable es "aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio". J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, San Juan, Pubs. JTS, 2000, T. I, pág. 371. En otras palabras, es aquella parte de la cual no se puede prescindir, pues, de lo contrario, las cuestiones litigiosas no pueden adjudicarse correctamente, ya que su presencia es

indispensable para conceder un remedio final y completo sin afectarlo. *López García v. López García*, 200 DPR 50, 63 (2018).

Ahora bien, "[l]a omisión de incluir a una parte indispensable incide sobre el debido proceso de ley que cobija al ausente". *Colón Negrón et al. v. Mun. Bayamón*, 192 DPR 499, 511 (2015). Por tanto, el mecanismo establecido en la Regla 16.1 de Procedimiento Civil, *supra*, parte de dos principios fundamentales: (1) garantizar la protección constitucional de que una persona no sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el decreto judicial emitido sea completo. *López García v. López García*, *supra*, a la pág. 64.

Es por esto que, nuestro Tribunal Supremo ha expresado que, "[a]nte la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia". *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677-678 (2012). Al incidir tal ausencia sobre la jurisdicción del tribunal, deberá entonces desestimarse la acción. *Íd.*, a la pág. 678. A tenor, la falta de parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier etapa del litigio, incluso en la apelativa. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007). En consecuencia, los tribunales apelativos deben levantar *motu proprio* la falta de parte indispensable, debido a que ésta incide sobre su jurisdicción. *Íd.*, a las págs. 223-224. No obstante, dicha desestimación no tiene el efecto de una adjudicación en los méritos ni de cosa juzgada. *Íd.*, a la pág. 224.

Adicionalmente, nuestro Alto Foro ha expresado que la interpretación de la Regla 16.1 de Procedimiento Civil, *supra*, requiere de un enfoque pragmático. *Romero v. S.L.G. Reyes*, 164 DPR 721, 732 (2005). Es decir, su aplicación no depende de una fórmula rígida, sino que "[l]a determinación de si debe acumularse a una parte en un pleito depende de los hechos específicos de cada

caso". *López García v. López García, supra,* a la pág. 65. Por consiguiente, los tribunales tienen el deber de realizar un análisis sobre los derechos de las partes que no estén presentes y de las circunstancias particulares del pleito: el tiempo, el lugar, las alegaciones, la prueba y las clases de derechos e intereses en conflicto. *Colón Negrón et al. v. Mun. Bayamón, supra,* a las págs. 511-512.

## C.

La Ley Núm. 85-2018, conocida como la Ley de Reforma Educativa de Puerto Rico, 3 LPRA sec. 9801 *et seq.*, reconoce que los empleados transitorios serán contratados para trabajos de duración fija y no tendrán derecho propietario de su posición. 3 LPRA sec. 9803. A su vez, la Ley Núm. 56-2019 define el nombramiento transitorio elegible como aquel que se hace por un término fijo que se le expide al personal docente, que posee certificado regular de maestro en la categoría del puesto en el cual es nombrado. 18 LPRA sec. 276b. Por otro lado, un nombramiento transitorio provisional es el que se le otorga al personal docente que no posee el certificado antes mencionado. *Íd.*

La referida legislación, previo a sus enmiendas del año 2022,[1] disponía que aquel personal reclutado durante el año escolar 2018-2019 sería elegible para una extensión de vigencia del nombramiento exclusivamente en la categoría del puesto para la que fue nombrado durante ese año escolar. *Íd.* sec. 276c. Seguidamente se establece que el periodo de nombramiento se extiende por un máximo de tres (3) años escolares, siendo el 30 de junio de 2022, la fecha límite para completar los requisitos del certificado regular docente. *Íd.*

---

[1] Se utiliza el texto legislativo previo a sus enmiendas del 18 de enero de 2022 y 19 de julio de 2024, por ser aplicable a los hechos de este caso.

Ahora bien, nuestra jurisprudencia ha sido clara al delimitar que, un empleado público que ostenta un nombramiento transitorio no tiene una expectativa real de que tal nombramiento brinda una permanencia o extensión del término de manera constante. *Depto. Recs. Naturales v. Correa,* 118 DPR 689, 699 (1987). Sin embargo, la expectativa de continuidad se mantiene durante el periodo de vigencia de su nombramiento. *Orta v. Padilla Ayala,* 131 D.P.R. 227, 243 (1992). Nuestro Tribunal Supremo ha resuelto que, de existir un interés, la agencia nominadora tiene que seguir ciertos procedimientos para privar al empleado de su empleo, de forma que se cumpla con el debido proceso de ley. *SLG Giovanetti v. ELA,* 161 DPR 492, 506–507 (2004). La propia legislación impone que:

> *el maestro participante del programa de extensión de vigencia del nombramiento que no cumpla con lo requerido por el Departamento de Educación, en el tiempo estipulado, dará por terminado su nombramiento, luego de que el Departamento le haya hecho las notificaciones correspondientes de incumplimiento y cumpla con el proceso administrativo vigente.* Véase Art. 3(7) de la Ley Núm. 56-2019*, ante.*

Para cumplir con las garantías mínimas del debido proceso de ley, la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, establece los siguientes requisitos: "(A) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (B) Derecho a presentar evidencia; (C) Derecho a una adjudicación imparcial; (D) Derecho a que la decisión sea basada en el expediente". 3 LPRA sec. 9641(a)(2). En su vertiente procesal, el debido proceso de ley se extiende a "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado, y (7) que

la decisión se base en el récord". *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 889 (1993).

En cuanto al remedio disponible, se ha determinado que la terminación ilegal de un empleado, previo al vencimiento de su nombramiento, se limita al pago de los haberes dejados de percibir hasta el término de su nombramiento más los daños y perjuicios que dicha actuación le hubiera provocado. *Orta v. Padilla Ayala*, *supra* a la pág. 247.

### III.

En el caso que nos ocupa, el Recurrente cuestiona la determinación de la OASE, que confirma la terminación de su nombramiento como empleado transitorio en el puesto de Coordinador del Programa Vocacional. Inconforme, el Sr. Minaya solicita que se deje sin efecto la evaluación realizada el 10 de mayo de 2021 y que se le ordene al Departamento de Educación el pago de los salarios dejados de devengar por el periodo restante de la extensión de su nombramiento.

En nuestro primer análisis de la Resolución recurrida, debemos evaluar la determinación de la OASE en cuanto a la improcedencia de la impugnación del nombramiento posterior por falta de parte indispensable. No le asiste la razón. Veamos.

Según el derecho anteriormente discutido, una parte indispensable es aquella que tiene un interés común sin cuya presencia no puede adjudicarse la controversia. 32 LPRA Ap. V, R.16.1. El interés común, es aquel que impide la confección de un remedio adecuado porque podría afectar o destruir los derechos de la parte que no está presente en el pleito. *RPR & BJJ, Ex Parte, supra.* La omisión de su acumulación en la reclamación incide en el debido proceso de ley que cobija al ausente. *Colón Negrón et al. v. Mun. Bayamón, supra.*

En la Apelación presentada el 1 de febrero de 2023, figuran ciertas alegaciones referentes al nombramiento realizado por el Departamento de Educación. Conforme se desprende del escrito, el Sr. Minaya arguyó que, la persona sucesora no cuenta con la experiencia requerida para ocupar el puesto de Coordinador de Programas Vocacionales. Sin embargo, el documento no detalla constancias sobre el razonamiento para tal imputación, ni tan siquiera nombra a la persona la cual se hace referencia. No cabe duda de que este individuo era una parte indispensable. Ello fundamentado en que sus derechos pudieran quedar afectados por la determinación que realizara la OASE. Para cumplir con el debido proceso de ley que le cobija a esta parte ausente es necesaria la notificación oportuna del pleito. Por ende, la agencia recurrida actuó correctamente.

Por otro lado, el Recurrente sostiene que la OASE erró en su disposición en cuanto a los demás remedios solicitados. Nuestro próximo enfoque, nos obliga a analizar de entrada si existía una expectativa de continuidad del nombramiento del Sr. Minaya, que le permitiese solicitar el pago de los salarios dejados de devengar.

La norma ordinaria es que un empleado transitorio no genera una expectativa de permanencia. *Depto. Recs. Naturales v. Correa, supra.* La particularidad de un nombramiento transitorio es que no existe una obligación de extender el término de manera constante. *Id.* No obstante, existe una expectativa de continuidad por el periodo que dure su nombramiento. *Orta v. Padilla Ayala, supra.* De surgir el interés de continuidad antes mencionado, entonces la agencia nominadora deberá seguir los procedimientos del debido proceso de ley antes de privar al empleado de su puesto transitorio. *SLG Giovanetti v. ELA, supra.*

Específicamente, la Ley Núm. 56-2019 dispone que, cualquier maestro que participe del programa de extensión y que

no cumpla con lo requerido por el Departamento de Educación, se dará por terminado el nombramiento luego de que la agencia cumpla con el derecho administrativo vigente. Previo a sus enmiendas, la legislación disponía que el personal reclutado durante el año escolar 2018-2019 era elegible para la extensión de su nombramiento por un periodo de tres (3) años, hasta el 30 de junio de 2022. En cuanto al remedio disponible, se ha determinado que la terminación ilegal de un empleado, previo al vencimiento de su nombramiento, se limita al pago de los haberes dejados de percibir hasta el término de su nombramiento más los daños y perjuicios que dicha actuación le hubiera provocado. *Orta v. Padilla Ayala, supra* a la pág. 247.

Conforme a las determinaciones de hechos realizadas por la OASE, el Sr. Minaya laboró como Coordinador del Programa Vocacional en el año escolar 2018-2019. Por consiguiente, su nombramiento se extendía por tres (3) años, en base a la disposición legal que rige la extensión de los términos. En virtud de lo antes expuesto, el Recurrente albergaba una expectativa de continuidad hasta el 30 de junio de 2022, fecha límite para que el personal docente presentara los documentos solicitados por el Departamento de Educación.

Ahora bien, la OASE confirmó la terminación del contrato extendido del Recurrente en virtud de un Memorando Oficial emitido el 4 de julio de 2021, intitulado Reclutamiento del Personal Docente de las Escuelas y del Nivel Postsecundario en el Departamento de Educación para el Año Escolar 2021-2022. De un análisis de este documento, se desprende que este hace referencia al reclutamiento de los puestos vacantes en las escuelas. Comprende, además, cómo se llevarán a cabo los procesos de las entrevistas. En el inciso (C)(4) dispone que "[n]o podrá ser seleccionado ningún personal docente que tenga

querellas administrativas o acciones disciplinarias en la División Legal. Tampoco se podrá seleccionar al personal docente que haya presentado un patrón de ausentismo o recibido evaluaciones en su desempeño docente con nivel de ejecución mínima o inadecuada".

En resumidas cuentas, este Memorando Oficial corresponde a los procedimientos para el reclutamiento del personal docente para el año escolar 2021-2022. Nada se dispone sobre el término remanente de la extensión del nombramiento durante este mismo año escolar. Del expediente no surge que los resultados de la evaluación sean requisitos para mantener su puesto por el remanente del término de su nombramiento, más bien, surge que esta exigencia es aplicable para el nuevo personal a ser reclutado. Finalmente, cabe aclarar que, el único requisito en ley que exige un resultado particular en las evaluaciones corresponde al cambio de estatus de transitorio provisional a un estatus regular. Estos supuestos no se configuran en los hechos ante nuestra consideración.

Puntualizamos que, del propio lenguaje de la ley se desprende que para dar por terminado el nombramiento de un participante del programa de extensión del nombramiento, era necesario que se cumpliera con las notificaciones correspondientes a sus faltas y velar por el cumplimiento con el proceso administrativo vigente. De las determinaciones de hechos realizadas por la OASE, no consta que se hayan realizado notificaciones previas a la carta emitida el 8 de julio de 2021. Tampoco surge algún procedimiento administrativo que cumpliera con las garantías mínimas del debido proceso de ley. En vista de que la cancelación de su nombramiento se realizó contrario a derecho, corresponde que se ordene al Departamento de Educación al pago de los salarios, haberes y emolumentos dejados

de recibir para el año escolar 2021-2022, periodo restante de la extensión de su nombramiento por virtud de ley.

Por último, el Sr. Minaya señaló una serie de irregularidades en el proceso de evaluación para el año escolar 2020-2021. Sobre este particular, el Recurrente solicita que se elimine esta evaluación de su expediente. Expresó que, la evaluación fue nula porque no recibió la orientación correspondiente previo a la evaluación. Además, insistió en que el director escolar le informó que el resultado de la evaluación había sido satisfactorio. Finalmente, indicó que no fue hasta el 7 de septiembre de 2021, que recibió copia de la evaluación.

Según las determinaciones de hecho realizadas por la OASE, notamos que las puntuaciones sustraídas en su evaluación responden directamente a la falta de la entrega de un plan de trabajo. Resulta que, el Recurrente aceptó que no hizo entrega de este documento. Además, surge que no solicitó la oportunidad de presentar los planes porque "ya era finales de mayo y había salido bien en su evaluación; aunque ese señalamiento de falta de planes ya le había sido indicado por el director escolar y que por ello recibiría menos puntuación".

En lo referente a la falta de orientación y notificación del resultado de la evaluación, el Sr. Minaya se limitó a presentar su testimonio. El Recurrente alegó que, "el director escolar no hizo entrega alguna de la evaluación, ni en papel, ni electrónica conforme al procedimiento establecido por el Departamento de Educación en la Carta Circular 06-2019-2020, emitida el 2 de octubre de 2019 y enmendada el 21 de julio de 2020". Sin embargo, consta que los resultados de la evaluación se encontraban disponibles en el Portal de Cumplimiento y Seguimiento. El Sr. Minaya testificó en la vista que no revisó el

portal por no tener una computadora.[2]  Más adelante, manifestó que se le informó que el resultado se encontraba en su correo electrónico.  No obstante, el Recurrente expresó que no revisó el mismo porque "estaba de vacaciones y no estaba pendiente a correo electrónico … a nada de eso porque yo tenía un contrato de tres (3) años".

Si la parte recurrente no demuestra la existencia de otra prueba que sirva para demostrar que la actuación de la agencia no está basada en evidencia sustancial o que reduzca el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hechos y no deberá sustituir el criterio de la agencia por el suyo. *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Así pues, es meridianamente claro que el resultado de la evaluación fue producto de la desatención del Recurrente.  Lo cierto es que del propio testimonio surgió que, este aceptó que no entregó el plan de trabajo y que tampoco corregiría sus faltas por ser final de año.  En cuanto a la falta de notificación de su resultado, verbalizó que se encontraba en su periodo de vacaciones y que no estaría pendiente a esto.  Ello reforzado en la confianza de que su nombramiento era por un periodo de tres (3) años.  Ante este cuadro fáctico, no encontramos en el expediente fundamento alguno que amerite la eliminación del resultado de la evaluación. Resulta evidente que, la decisión de la agencia se basó en el testimonio de las partes y la prueba que obra en el expediente administrativo.

En ausencia de abuso de discreción, arbitrariedad, ilegalidad o actuación irrazonable, no encontramos razón para apartarnos de la norma de deferencia que los tribunales deben conferirle a las

---

[2] Posteriormente, según consta en las determinaciones de hechos, el Departamento de Educación le hizo entrega de una computadora, tres (3) meses antes de que culminara el año escolar.

determinaciones finales de los foros administrativos.  Por tanto, procede que confirmamos el dictamen emitido.

**IV.**

Por los fundamentos antes expuestos, los que hacemos formar parte de esta Sentencia, se confirma la Resolución recurrida en cuanto a la improcedencia sobre la impugnación del nombramiento por falta de parte indispensable.

Por otro lado, se revoca la determinación de No Ha Lugar referente a la restitución de los salarios no devengados.  En consecuencia, se ordena al Departamento de Educación que realice el pago de los salarios, haberes y emolumentos dejados de recibir para el año escolar 2021-2022, periodo restante de la extensión de su nombramiento por virtud de ley.

Finalmente, se sostiene el resultado de la evaluación realizada para el año escolar 2021-2022.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones